Case number 16-7076, DL et al. v. District of Columbia, a Municipal Corporation et al. appellants. Ms. Pittman for the appellants, Mr. Gluckman for the appellees. Mr. Gluckman for the appellants, Mr. Gluckman for the appellants. Good morning. May it please the court, I'm Lucy Pittman on behalf of the district appellants. And I would like to reserve three minutes for rebuttal. The district court lacked jurisdiction in this case when the case came back on remand. And in 2013, the plaintiffs filed a second amended complaint and a request to certify four subclasses. At that time, the named plaintiffs had moot claims. Plaintiffs' counsel did not substitute for individuals with live claims. And the case should have been dismissed as moot at that time. Now, there are exceptions to mootness in the class context. And plaintiffs in this case have indicated that they believe the inherently transitory claim exception applies. Would you mind just starting with the Garrity, with the Relation Back exception? Sure. Why don't you start with that? Sure. I actually see two places in which Relation Back applies with the Supreme Court. And one is Garrity, where there is a procedural error that occurred. So in Garrity, he had a live claim when he sought class certification. And the district court erroneously denied certification. Isn't that, focusing on the word erroneous, isn't that exactly what happened here? It was the erroneous denial that prevented the class from obtaining independent legal status from the named plaintiff. No. I'm sorry, Your Honor. Here, it's the erroneous grant of an excessively broad class that prevented the class from obtaining independent legal status. Why aren't they exactly the same? I would say that the difference is that here, as you mentioned, there isn't a denial. And here, I think the thing that prevents the class from having, from being able to be certified, is that there wasn't a named plaintiff who had a live claim. There was certainly an opportunity to add those. And there are cases like McLaughlin and Garrity where there were individuals. In McLaughlin, they actually did add named plaintiffs with live claims. And in Garrity, they sought to do so. And I also take the Supreme Court literally that when they say it's limited to a denial of class certification, which is what they said in Garrity. When the plaintiffs first sought class certification and the district court granted it, they all had, all the plaintiffs had standing at that point, the named plaintiffs, right? I believe that's right, in 2006. Right. And so the only thing that prevented the class from obtaining the independent legal status it needed to be certified, even though the named plaintiffs lost their standing later, was the erroneous ruling of the district court. And that's the same here, isn't it? It's exactly the same here. Sure, that was a denial in Garrity, but this was an erroneous grant. It was too broad. Had that ruling been correct, there wouldn't be a problem. So what's happening here, the way I see this case is that what Garrity is getting at is you can't, it's not fair to deny class certification if the lack of standing of the named plaintiffs occurs because of a district court's error. It seems to me that's what that case is about. And it seems to me that's what happened here. I don't know that we can pin all of it on it being the district court error. I think certainly plaintiffs had an opportunity in defining that original class and trying to define it with a common contention, as well as throughout the duration of that litigation to try to correct. When they first filed their, when it was first, the first certification came pre-Walmart. So they weren't on any notice then. And after notice, even the plaintiffs suggested four subclasses, which the district court didn't take them up on. Right. But even at that point, the named plaintiffs' claims were not live. And I think there's a reason why we see in all of these cases that have these issues. And Losardi at a Third Circuit I think is a similar case, and Culver at a Seventh Circuit is similar, where the court is saying when you have a class that has been decertified, or in this case vacated, it is an obligation to come up with named plaintiffs who have live claims if you want to proceed. Well, that's only if relation-backed doctrine doesn't apply. I mean, if they don't have to do it, there's no reason to. I mean, maybe they, maybe it would be a good idea. Maybe the district court will do that. But if the relation-backed doctrine applies, they don't really have any obligation to come up with named plaintiffs. Well, I also think that what's key in Garrity is that the court was indicating that the relation-backed doctrine, there are two things with regard to mootness that Garrity pointed out. One was no live issue. And the court indicated that there was demonstrated evidence of a live issue because there were current inmates who were subject to the guidelines who were saying, I would like to be substituted. We don't have that here. No parent or child has been offered to substitute. So we first do not have the first aspect of mootness, which is there's no demonstrated live issue. The second issue is the cognizable interest. And there, Garrity indicated you could relate back where, if the individual who sought the certification had a live claim when he sought it, but for this erroneous denial, there would have been a class certifying. Here, when we went back in 2013, none of the named plaintiffs had a live claim. So we don't have a demonstrated showing of there being a live issue. They had become moot because of the district court's erroneous decision and correction by this court of appeals. That's why they didn't have live claims anymore. I'm having a hard time seeing where the cases fall into that line. Okay. Can you tell me exactly when this mootness attached? Do we know? I've been sort of vague about somewhere in between these two events. Sure. It looks like it was about in 2009 that you could indicate that all of the named plaintiffs' claims became moot. So these are preschool child find claims, and so they're good for during the preschool years between three and five. But then also, if the injury is discovered later, then they would be longer than the two years. And then there's also the ultimate compensatory education that was provided. And so by 2009, they were all over the age of five, and all services had been provided. But is the harm that's happening to them from that stopped? If they didn't get services early that they needed, do you think that went to be harmed? I don't believe so. I think that's what the compensatory education that was provided to them resolved. And there hasn't been a dispute at any juncture that, indeed, any of those named plaintiffs have a live claim still to this day in terms of preschool child claims. But they're not seeking compensatory education here. I'm sorry? They're not seeking compensatory education. No, they're not. Sorry. They're not. I mean, the harm is still ongoing. I don't hear D.C. denying that they're still out of compliance with IDEA. You're arguing mootness, class action. You've got some quibbles about the injunction, but I don't. You're not here telling us that the underlying problem has been solved. Right? So you do have continuing harm in terms of the injunctive relief the plaintiffs are seeking. I think there's an affirmative obligation on plaintiffs to have an individual who can represent the class in that state. As I said, that's only if the Relation to Act doctrine doesn't apply. I think that also relates to whether there's actually a live issue. And so to the extent that there is still – But we don't dispute that members of the class have live claims and are continuing to be harmed. Certainly, if there are members of the class. Do you dispute that there are members of the class? I don't dispute that there would be child find claims today involving preschool child find. Certainly, the district is not stating that. I thought your complaint was about the named plaintiffs. That's right. There's controversy between you and the class that's still alive. But there can't be a class without there being a representative member who can represent those claims. And so we are sitting here today not knowing that, you know, if indeed the preschool child find is so bad, why is it so difficult to locate someone who has a live claim? You don't know that it's difficult. I mean, there's nothing in the record that suggests they tried to find – or is there? Am I missing something? Is there something in the record that suggests that Not that I'm aware of. Okay, well, that's my point. I mean, if – I keep going back to my point earlier, which is that if the relation back doctor applies, they have no obligation to find other plaintiffs. Now, maybe the district court would, over a period of time, decide it's a good idea to get a fresh representative plaintiff. And Garrity says he can do that. But what I don't get is – just stepping back for a minute. In terms of ensuring that we have a justiciable case here with sharp issues, that's what Garrity talked about, right? Issues are sharpened. You've got vigorous advocates and a continuing problem. And Garrity's got all this language in it about how these mootness questions are flexible, they're not fixed, right? So we're looking at the whole picture. What's the reason for us to say, well, given Garrity and all that language, we should conclude that this case is just not justiciable? Do you see my point? What value would there be in that? Wouldn't that do terrible damage to the need to correct the underlying problem that this class is still suffering? Why would we do that? I think a couple of things here. And I would like to actually go back to the relation-back principle just for one moment. Because the Supreme Court did talk about it again in Simcic in 2013. And there you have similarly – it wasn't a class action. It was a collective action. But they looked at and relied upon class-action cases, including Garrity. And there they said the relation-back doctrine couldn't apply because there was nothing to relate back to. There you have a class that the named plaintiff's claim became moot. She sought certification after it was moot, and the court said in that context you can't relate back because relating back is to the request for certification. And so that's what we have here. And that's why in McLaughlin and in Culver you have this language about people being added with live claims. Or, quite frankly in Culver, the really harsh criticism for not doing so. The other aspect is we do need to be mindful that these are not exactly the same classes. They're very similar. And I would say, getting into the Walmart argument, that they are very similar. But they are indeed different classes. The first class was one very broad class, and now we're coming in with four subclasses. So I also don't know that we're relating back to the same request. The first request was fully litigated with Rule 23 analysis. So, for example, the Gale case that is cited in plaintiff's brief with regard to whether or not the Rule 23 or the class certification had been litigated to completion. It had been litigated to completion in that first request. Can I just clarify one thing you just said? Are you asserting that when the district court created these subclasses that it added people that were not included in the original broad class or subtracted people that would have been included within that original class? Or, I thought you said you're not sure it's the same classes. It's fundamentally very similar. I guess I haven't actually done the analysis to see if there would be some people who would be included or excluded. I'm not sure why you were saying that. I had thought, I hadn't heard any argument that, in fact, the reason we don't have relation back is that we actually have different people in these classes as opposed to litigated breakdowns. If my answer led you to believe that I meant different people than I, then I will correct that. I'm not saying that these four subclasses, for purposes of this argument, are the same people. We haven't changed who the classes are other than people are always adding, but that was happening before. There's always new folks coming into these classes. I think my argument was to indicate that this was a new request for class certification, that the first request for class certification had been fully litigated, had gone up on appeal, so that, for example, the Gale argument is not applicable, and that, indeed, they went back and divided that large class into four. And you say in your brief, maybe this is segueing into another issue, but you say in your brief that these four really aren't any different than the original class, that you say basically what they're arguing is that there's just a violation of IDEA. That's what your brief says, right? And I just, I mean, let me just ask you this because this seems to me, the question I want to ask you kind of wraps up both the question of class certification and the remedy and everything. It's contrary to what you say in your brief. This isn't just a general allegation about violating IDEA. Each of these classes, subclasses, assert a completely different failure in D.C. policy at a different stage of the child-fine process. I mean, take, for example, subclass one, identification, right? They're saying the allegation is that the district is failing to comply with its identification obligations under IDEA, not IDEA generally, but its identification obligations. And then there's, you know, there's this statistical findings that it's now 6%, should have been 8.5%, and the court entered an order, an injunctive order, that focuses on that. And so what you have is a specific element of, a unique element of D.C. policy here, identification, that can, in Walmart terms, be resolved on the basis of the same facts. Either they are or they aren't. And it can be corrected with, as Walmart said, a stroke of a pen. I'm sorry, I missed the last part. A stroke of a pen, the injunction. So why isn't this just exactly what Walmart was directing the district court to do? I could go through all of these. They're all the same. It's exactly the same for eligibility determination, and it's exactly the same for transition. Each identifies an element of IDEA. Each rests on a common set of facts. Each has evidence that relates to it, and each is dealt with by an injunction. What else does Walmart require? So I think Walmart, and I think that this court's opinion in the first D.L. opinion, does require more. I think it requires more than to define the classes based upon all members have suffered from the same violation of law. And we have to be mindful that's exactly what the district court said when it justified certifying these four subclasses, that the reason that they solved the broadness problem was because they were divided according to the specific IDEA violations. And I think that Walmart- Is this your point that, well, you know, let me stick with identity, okay? Is this your point, you say it in the brief, that, well, you know, a child might not have been identified for several different reasons, right? That's your point, right? But then, first of all, I don't see anything in Walmart that requires that if you have a discrete policy violation like they have here, that it has to affect each member of the class the same way. The point is the policy, that is, the policy is failing. Under the policy, the district is failing to achieve its obligation to identify these students. And if you're right that the fact that they're identified in different ways or unidentified in different ways would be then- is a problem, then I don't see how anybody could bring a class action. You'd have to bring- what you'd have to bring under your theory is you'd have to- your plaintiff would have to be a group of people who were not identified and all who were not identified, for example, one of yours is insufficient outreach. So presumably you'd have to have a subclass that says all students who were not identified because of the district's failure and who were not identified because of insufficient outreach. Is that what you're saying? I think what I'm saying is precisely what I think Walmart in the first opinion in this case said, which is there does need to be a uniform policy or practice identified. And I disagree that there is one. And the district is failing. Why is that not the uniform policy? I think that if- to give an example where I think you could have a class action for subclass one would be, for example, if there was this policy, then they have a robust policy for identifying children, but it excluded homeless children. You could have a class of homeless children who are not identified. Or if it excluded foster children, you could have a class- What in Walmart tells you that that's required? Well, what Walmart indicates in what the first- in applying it to this case previously is that all of the class members need to have a common link or glue that holds their claims together. And the reason that you could have in subclass one, and I'll give you an example of why it can be very difficult to state that just identification is sufficient, is how has the district failed a child who, for example, might be a homeless child in Ward 7 and who is in and out of homeless shelters and isn't identified? And a child who lives in Upper Northwest who goes to a pediatrician in Maryland and thus doesn't have- But all those problems will be taken care of under this injunction. What the court has found is that the district- the law requires the district to identify all three- to five-year-olds with disabilities, right? That's what's in the law, right? That's right. Okay. And it's clear from the statistics that the DCPS is not doing that. In other words, we know that from the statistics and we know that from the absolute numbers. So 100 to 500 kids a month are not being identified. The district courts- and that's a fact. It's been proven in this case. You have some quibbles with the evidence, but you raise those in the district court. He didn't agree with you. That's an established fact. The injunction requires that to be corrected by half a percent a year. Now, that goes directly to the violation of IDEA, namely the identity obligations under fine. And if there are different reasons why children aren't being identified, the district will have to figure that out as it complies with the order. Right? I think Walmart requires more. I think that, for example, plaintiffs' counsel note that there are three policies that are actually identified in the findings of fact. What's important there is not one of those policies applies to subclass one. We are sitting here without knowing what exactly the district is falling short with in terms of subclass one. It's pretty obvious. It's totally obvious. The district court accepted this money from the federal government and it made a pledge, right, to identify all children. It isn't. Period. Why is it any more complicated than that? Because the reason that the child is not identified is going to be relevant for how you get to a common answer, which is what Walmart asks for. The common answer is the district must identify all children with disabilities. Period. That's the deal D.C. made with the federal government. If it didn't want to do it, it didn't have to take the money. Right? But it took the money. That's its obligation. Actually, in my sense, that's the clearest example here of a common policy. It's right in the statute. I don't know how to answer the question differently other than to state that I think a Walmart in the first D.L. opinion requires more than a violation of a provision of IDEA. I do see that I am out of time, and so I want to be mindful of that. I'll give you a few extra minutes. Okay.  Great. Thank you. Good morning, Your Honors. May it please the Court. I'm Todd Gluckman, and I represent the plaintiffs. This case is about the critical requirement on the District of Columbia to find very young children with disabilities and timely provide them with necessary special education services. Judge Lambert found that such services can work a miracle, and yet the district has been systemically failing to comply for more than a decade. Contrary to the district's argument, this case falls into three mootness exceptions. This case is just like Garrity. I just want to address a few points. Number one, when this case went back down for subclass certification, they were the exact same class representatives just allocated to subclasses. Number two, Garrity also dealt with an issue of subclasses. If there was a single class certified in the district court in Garrity, the Supreme Court addressed the fact that there may be appropriate for subclasses to be certified. Of course, the claims were moot at that time. It went back down to the district court, and the claims were certified. The fact that the class got divided into four subclasses does not pose an issue. And plaintiffs, of course, have live claims within the class. Judge Lamberth issued a 130-page decision stating that the district is failing substantially to provide children. In that regard, the way the subclasses are phrased, is it the first one, the child-kind one, it includes everyone who, when they were 3-5, or will be between 3-5. So that sounded to me as though these classes actually don't stop. You don't exit the class when you turn 5, because you have the word were in there. So you seem to encompass people even after they've aged out. And so I was asking before, is there some aspect in which, apart from the compensatory education claims that you envisioned when you put were in here, the injunctive belief is actually still relevant even after you've left? Is there some aspect of that that would overlap or inform the compensatory education? Why is the word were there? What does it do? Well, I expect that when we initially put that in there, that the compensatory education issue may have been relevant. But of course, we have had this class certified under 23b-2. There are no claims for individualized relief, and we're simply seeking an injunction. That's what I'm trying to figure out, is how the injunctive relief helps folks that were. I'm not understanding about the linkage. Because your name plaintiffs actually still do fall within this class definition, because of the word were. So that's what I'm just trying to understand. That's exactly right, Your Honor. I mean, even after a child moves on, if they have not been identified, they have not received the care that they needed, obviously it is important that this injunction be in place so that they actually do eventually receive the services that they need. Once a child doesn't receive a smooth and effective transition at age 3, assume that they didn't get their services at age 5, still haven't gotten their services at age 6, they still are going to have a claim for that relief, and an injunction would have an impact on them. Do they still have a live interest in the liability determinations that were made here? They certainly would. Now, this case also falls under the SOSNA and the inherently transitory exceptions. IDEA cases are by their very nature inherently. Wait a minute. Do you have to meet both of them? No, Your Honor. Okay. These are all independent. Independent. Okay. They're all outcroppings of the same. Just go ahead. I just want to answer that. So explain the transitory one then. Sure. For example, if you have a child who doesn't receive services by that child's third birthday, they're only going to have a live claim for injunctive relief until they receive those services. That could take a day, a week, a month, or longer, as was the case, certainly when these plaintiffs were going through the system. But in any event, they're inherently transitory. And as I was saying, these are all outcroppings of the same fundamental principle, which is that as long as a class still has active claims, and we do, and as long as there's no dilatory conduct and there has not been here, the moving of the named plaintiff's claims will not move the class claims, and these claims are not moved. Now, the central issue for class certification is commonality, of course, and the commonality question hinges on the underlying substantive law. In Walmart, the substantive law is Title VII, so to prevail the plaintiffs needed to show that Walmart's employment decisions were motivated by discrimination. The only way to commonly adjudicate the millions of nationwide employment claims would have been if there was a common unlawful policy which applied to all of the decisions. Now, that, of course, didn't exist, so you couldn't adjudicate that as a class action. But Walmart made clear that the issue is whether the claims could be productively litigated at once, and they couldn't be there, but they could be here, and they were here. As the district court explained here, the substantive law is entirely different. Congress imposed an affirmative obligation under the IDEA that policies and procedures to ensure an identification, the provision of a timely evaluation, and so on. It's not like Title VII where there's a prohibition on discrimination. There's an affirmative obligation, and plaintiffs alleged and proved that the district's policies and practices were not effective to meet their affirmative obligations. Now, there are several statements in Walmart that the district attempts to use to their advantage, and we've heard one of them right now, but those relate to Title VII law and not to the claims here. For example, in Walmart, you needed to know the reasons for the employment decision because that's necessary to adjudicate a Title VII claim. That's not necessary here to show liability. What's necessary to show liability is a failure to comply with the affirmative obligations under the IDEA. We've shown that, and all of the claims are clued together. Plaintiffs in each subclass are challenging the exact same conduct by defendants, and there are no individualized determinations. I was also wondering if when you have something like this that's spending clause legislation, so it's nothing like Title VII, where Congress sets up a scheme that gives states, you have to make promises to get the money, but then the states have some flexibility in how they implement it as long as they achieve the required goals. So in a context like that, does the Walmart conception of having to identify what they, their sense of you have to identify exactly what we didn't do, was it a social worker breakdown, was it an outreach breakdown, was it an information breakdown, given that that's really for them to decide how they're going to implement it, does that sort of change the Walmart inquiry in the spending clause context? I don't know. You don't have flexibility to discriminate in Walmart. I don't, I think I understand the question. I don't know why that would change, and in fact, the district court in its injunction left the district with substantial discretion. They say this is an onerous injunction. Well, that's a better point, right? You have to have, at some point, they have to have maneuvering room. They have to meet goals and obligations and promises, but the statutory scheme, spending clause legislation, leaves some maneuvering room, so it would be a little odd then if, to say to class, you had to go in and say, actually, you had to do it this way. You didn't do A, B, C, and D, so I now have four classes for A, B, C, and D. I think... But you broke the promise. That's our job. I think that's right, Your Honor, and that's exactly what, I think your point is right with regard to commonality, and as it came to injunctive relief, the court required them to hit a benchmark, gave them the flexibility to determine exactly how to do so. I have a question. What's the source of the cause of action for subclasses 3 and 4? The source of the cause of action is the IDEA itself. But there's no private cause of action there unless it's for denial of FAPE, and didn't the district court say there was no denial of FAPE alleged in 3 and 4, or am I reading that wrong? I'm not sure that there's no right to a cause of action unless you deny a FAPE. Oh, really? Do you think there's an implied cause of action for some procedural violation where FAPE is not necessarily denied? Well, the issue where this comes up typically is if you have an individual case and you have a child who has, say, an IDP that's delayed by several days, and perhaps there's no substantive violation, because that child has not suffered a substantive violation, that child could not bring a claim for a violation of a FAPE. I don't see any reason that that same rule would apply where there's an overt obligation on the district to develop policies and practices that require them to. So you think there is an implied cause of action that isn't necessarily based in a denial of FAPE? I don't know that it's implied. I think it's outright in the. . . Is it expressed in the statute? I thought the statute was clear that it's only for denial of FAPE. I don't believe that's right, Your Honor. I apologize if I'm missing something. But the IDEA, the Supreme Court has said that plaintiffs can bring any claims under the IDEA where there's issues related to identification, evaluation, transitions. I believe there was a long list. And the first step, this is in Rowley, is to look at whether or not the state has developed the policies and procedures that are necessary. I believe that the way the law has developed, that if you haven't found a violation of a FAPE, then you can't proceed on those sorts of claims. But in any event, if there's an individual claim. . . But I don't know why that would apply in a systemic context. And here, what we have shown, we presented evidence showing numerous children having extensive delays. We had our statistical expert. . . That's the common thread there. And you don't have that in subclass 3 or 4. Well, certainly many of those children were denied a FAPE because there are extensive delays with regard to their eligibility determinations and their transitions. Now, these individual claims were not adjudicated individually, so there was no need to address what impact they would have had on each individual child. But like I say, I don't. . . Well, it's a significant issue, isn't it? Because, I mean, the Secretary has some authority here, right? And Congress, so the argument would go, Congress has created a cause of action when there's a denial of FAPE. But when there's not a denial of FAPE and it's a systemic problem, that's the Secretary's domain. It's not a private cause of action to enforce that. Congress does that all the time, right? Well. . . And there's a pretty robust body of case law that gets us to discourage looking for, going around looking for private causes of action. Congress has to tell us expressly. Again, I don't see why you cannot, why there is no private cause of action here. I believe that there is a private cause of action here. And in the cases, maybe I'm wrong, but as I read the cases, there's a private cause of action when there is a denial of FAPE. And you haven't alleged that for subclass 3 or 4. So that's my point I'm making. But like I said, those cases all deal with individuals. I don't think there could be any reason that there would be a rule that plaintiffs, all of whom were denied systemically their rights under, to timely eligibility determinations and timely transitions, wouldn't be able to bring a claim. Let me describe it this way, for example. Let's assume for the moment the district said, we don't care what we're obligated to do. We are going to provide eligibility determinations within 124 days, instead of 120 days. Well, it is certainly possible that few children would suffer a substantive violation in those four days. But I certainly do not believe that the district courts would be prohibited from ordering the District of Columbia to actually comply with their obligations under the IDEA. And the issue about the Department of Education is that these are two alternative ways that the IDEA is enforced. And Judge Lambert found that for 20 years, since 1997, the Department of Education has been raising issues with the District of Columbia with regards to their noncompliance. The district simply had not improved. And the district has improved. They certainly have not improved enough. But the district has improved, and the district court found that the improvement was a result of this suit. The only other alternative would be essentially to let the system go the way it is and allow the district to flaunt its obligations to the children of the district. Now, when we were last before the court, the classes were all bunched up into one group. But now they are broken up into subclasses, and each subclass lines up with a common contention for that class and the IDEA claims that that class is bringing. For example, subclass one is children who are not identified. They allege that the district fails to satisfy its affirmative obligations to identify children. The common question is whether the district's policies and procedures to fail those children are identified. The answer is that they are failing, and the district court issued an injunction to fix the problem. There's a common question, a common answer, common liability, and common injunctive relief. How much can we look to? We're doing this post-trial now. How much can we look to what happened at trial to sort of retroactively gratify class action determination? Well, I think I understand the question. What you need to do, I think what needs to happen is a determination as to whether the Rule 23 determination was appropriate as an issue. But the fact that certain facts develop after the fact certainly supports the conclusion that the district... I'm just asking whether can we consider that. I think absolutely. If the question is did the district court issue or find an appropriate common question, and at trial the court was able to commonly adjudicate the claims, that further supports the district court's conclusion that this is a common question capable of common answers. Have you seen other cases where we've done that, where we or other courts have looked to the outcome of the case to say, I guess it was a good class or subclass? Quite honestly, I haven't looked at that question one way or the other, so I don't know how to answer that question. Do you have a distinction of the Seventh Circuit's decision in JMS? We addressed JMS in a footnote, and I can address really there are several distinguishing factors with regard to JMS. Number one, that case focused substantially on individual relief. There was a complex individualized dispute resolution mechanism developed in that case. That's not at all the case here. This is a B-2 action seeking purely injunctive relief. That case also lacked any sort of statistical evidence, and it had a class definition more similar to the class definition that was before Your Honors in 2013. Now it's broken into subclasses and everything lines up. In addition, in JMS they said that policies or procedures could be the basis for a subclass determination, excuse me, for a class certification, and that's exactly what we've shown here. Your Honors, I see that my time has expired, but if I can... One more sentence. What do you want to say? I say it is critical that this injunction remain in place so that the district's children can continue to receive the services that Congress required on a timely basis. Please affirm, Your Honors. Okay, great. Did counsel have any time left? Okay, you can take two minutes. You all didn't make my FAPE argument, did you? We did make an argument that there was no finding of denial of FAPE in this case. Did you argue that there's no cause of action? Yeah. No, I don't recall. Why not? Because I actually read it as they did have a cause of action for denial of FAPE for all of the classes. It wasn't until their opposition brief came out that they said it was just for class one. But do you disagree with the analysis that you have to allege that the only cause of action that Congress has created here is for denial of FAPE? Absolutely. And I think that the most recent Supreme Court case... The idea that it's been a long time and the district hasn't fixed problems doesn't give us authority to go about fixing them unless Congress has created a cause of action to do so, right? Right. I think almost every case talks about the technical violation alone isn't sufficient. There also needs to be a denial of a FAPE. A couple of quick points I want to start with on this. Isn't there by definition a denial of FAPE for a child who hasn't been identified? I don't know that that's the case. There have been cases where... What are we talking about? The difference between the 6% and the 8%. Those 2% don't have a FAPE. And that's what the district court found, right? And also, what about the ones for eligibility? Eligibility, what was it? What was it, percent? 15% don't get their eligibility in time, which means they don't get their IEP in time. So they don't have a FAPE. I have never seen a court case that has determined that children do not have a FAPE that isn't based upon the individual findings of children and making sure that their unique needs are met. So I don't know that the percentage by itself is going to get you to a denial of FAPE. But just... I was going to return to mootness for a moment, if we could. So a couple of things. Jurisdiction is a fundamental requirement. It was easy enough to have been established here, and it wasn't. When this class came back after remand, it was a class involving named individuals only. There was not a class in existence at that time that could satisfy jurisdiction. Sosa, Garrity, all of these cases are premised on the idea that someone can satisfy jurisdiction, and it wasn't satisfied here. Isn't there some irony in a case where the complaint is about D.C. has not found these children, that you're complaining that they didn't find them, either, and they couldn't name plaintiffs? Yes, I think it goes both ways, quite frankly. They were supposed to find them, even if you hadn't. If there's really a live issue out there, and if the district court's numbers are correct that it's hundreds of children... They can find them if you can't. That's your position. Yes. And I don't actually think that the district is doing a poor job of finding children. I think that the evidence shows that it's all over the city doing what it needs to do to try to do outreach. The children that have been found are not in the class. Not in the first class, the fine class. I'm sorry? The children that have been found are not in the first subclass. Right, so we're presuming that there are children who are not found, although no one has stood up to say, I want to be a representative party of this class. Quick question on commonality. So there's two other requirements. There's typicality and a single injunction requirement, right? If I think that they've met the commonality requirement for the three subclasses, is there any independent reason why they wouldn't have also met the other two? I read your brief as basically saying this is all about commonality. I think commonality is certainly the larger issue, but I think, again, we do have a lot of cases that refer to if the individuals have moot claims, they're not going to be adequate representatives. Forget the moot. Let's just talk about the three requirements. In other words, if I think that they've met commonality, you say in your brief district court made the same error in finding typicality as it did in finding commonality. And I'm just wondering, is there something? In other words, if I think the plaintiffs have met commonality, is there anything more I have to do about typicality and single injunction? Do you see my point? Do I have to go on and say, well, now I have to analyze that? Or from the way you've argued the case, does the conclusion that they've met commonality requirement mean also that they satisfy typicality? Typicality and commonality frequently merge, but I do think that there is a separate argument for the fact that these claims are not typical because it does need to be a question of the nature of the. . . But you make that argument for commonality. That's your whole argument for commonality. You say, well, look, some of these kids could not have been identified because they're homeless, right? Isn't that the same argument? No, I think that the. . . So the argument on commonality is really about whether or not their contentions are the same. And the typicality, I think, does look at the named plaintiffs to a certain extent and whether or not they have typical claims. Okay, all right. Anything else? Just. . . Okay. Did you have one more sentence you wanted to say? Well, I was going to make one more point about Walmart. Go ahead. And it's how it's been applied in other circuits. I think Jamie S. as well as an MD, both of them have indicated that defining the class based upon a violation of a provision of law is not sufficient. Okay. Thank you. Thank you. Case is submitted.
judges: Tatel, Griffith, Millett